## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **JOHN DOE,** a minor, by and through<br>his next friend, **MARJORIE A. BRISTOL** | } | |
| | } | |
| | } | |
| vs. | } | DOCKET NO. _____ |
| | } | |
| **JENNIFER NICHOLS**, in her official capacity | } | |
| as Commissioner for the Tennessee Department | } | |
| of Children's Services, **SONNY WEATHERFORD**, | } | |
| individually and in his official capacity as Sheriff of | } | |
| Sumner County, Tennessee, **SONYA TROUT**, | } | |
| Individually, **HONORABLE DAVID R. HOWARD**, | } | |
| Individually and in his official capacity as Juvenile Court | } | |
| Judge for Sumner County, Tennessee | } | |

## COMPLAINT

Plaintiff, John Doe[1] brings this action through his Next Friend, Marjorie A. Bristol, and his counsel, against the Defendants seeking injunctive and declaratory relief related to the conditions of his confinement in the Sumner County Juvenile Detention Center.

### **GRAVAMAN**

1.      John Doe (the child) is alleged to be a delinquent child under the laws of the State of Tennessee.

2.      The allegations of delinquency were levied against the child on or about December 4, 2018 in Sumner County, Tennessee.

---

[1]  The Plaintiff is a minor and uses the alias to protect his identity and in compliance with this Court's redaction rules.  Any other identifying information, including photographic identification has been redacted from other documents filed herewith.

3.      The child was initially detained by Sumner County, Tennessee in the county facility for a short time but transferred to the Rutherford County Juvenile Detention Center (RCJDC) on December 7, 2018.

4.      Upon admission to RCJDC he was placed on "indefinite 15's due to him being diagnosed with Bipolar Disorder" meaning that his supervision required staff observation no less than once every 15 minutes.

5.      The child remained at RCJDC until March 19, 2019 when he appeared for hearing on his attorney's motion for release from detention.

6.      The Court denied the child's motion on March 19, 2019 and the child was not returned to RCJDC.

7.      The child has remained detained at the Sumner County facility since that time and has yet to be adjudicated delinquent or the matter transferred to the adult criminal court system.[2]

8.      The place of pre-trial detention of children alleged to be delinquent in Tennessee must be approved by the court.

9.      Children in Tennessee may be detained pre-trial in a facility that is under the direction and supervision of the court or other public authority or of a private agency approved by the court.

10.     The Honorable David R. Howard (Judge) supervises and directs the detention facility maintained by Sumner County, Tennessee and is the presiding judge for the delinquency matter.

---

[2]  Juveniles may be detained in Tennessee without bond, so long as certain conditions exist that require the detention of the child for his own safety or in the interests of the community.  Only when a matter is transferred to adult criminal court is the child entitled to a bond.

11.     The Judge is employed by Sumner County, Tennessee.

12.     The Judge under state law has the authority to manage, modify or otherwise direct the conditions of confinement of pre-trial detainees in his role as approving authority, manager or administrator.

13.     The Tennessee Department of Children's Services must license all juvenile detention facilities that operate within the borders of Tennessee.

14.     The child is in the full guardianship of the State of Tennessee, Department of Children's Services (DCS) as an abused, dependent or neglected child.

15.     The parental rights of the child's parents have been terminated by state court judgment and the child is in the full guardianship and legal custody of DCS.

16.     This Court granted a preliminary injunction prohibiting RCJDC from using solitary confinement of juveniles as punishment in unrelated litigation on March 23, 2017.  *See Exhibit 1 (Doe vs. Hommrich, 3:16-CV-799, ECF No. 115)*.

17.     The Sumner County, Tennessee has procured a license from the Tennessee Department of Children's Services (DCS) to operate a juvenile detention facility that detains children in solitary confinement as a standard operating procedure.

18.     The Sumner County facility does not have the structural capability to house children in conditions other than solitary confinement.

19.     The child has been confined in solitary conditions since March 19, 2019 and will continue to be confined in such facility and in such conditions until the resolution of the delinquency matter which is not scheduled for another hearing until May 21, 2019.

20.     At issue before this Court is whether local governments may detain children indefinitely in solitary conditions as a standard operating procedure.

21.     DCS has acknowledged that the placement of juveniles in solitary confinement is harmful to the child's person and should only be used in emergency situations when no least drastic alternative exists to maintain the safety of the child or the safety of others.

22.     State law prohibits the use of solitary confinement for punitive reasons.

23.     DCS, as the legal custodian of the child, is aware that the child is placed in the Sumner County facility and is aware of the conditions of confinement of any child in the Sumner County facility.

24.     DCS has taken no negative licensure action against Sumner County's facility despite knowledge of the conditions of this and any child's detention in that facility.

25.     Sumner County voluntarily sought state licensure for its juvenile detention facility and has failed to maintain conditions of confinement that meet minimal standards of state and federal law.

26.     DCS defines seclusion as an intentional and affirmative act by a facility for maintaining safety of a child or staff. Using this definition, DCS regulates the manner, length of time and supervision of seclusion.

27.     The routine and indefinite confinement of a child in solitary conditions does not meet the definition of seclusion, *supra*, and is not regulated nor addressed by the rules promulgated by DCS after this Court's preliminary injunctive relief issued in the unrelated *Doe* matter.

28.     DCS has continued to permit the operation of the Sumner County detention facility that utilizes solitary confinement for *no reason*.

29.     The Judge ordered that the child be detained by the Sheriff of Sumner County pending hearing and directs that all necessary arrangements be made for that detention and

permits the Sheriff to "transport the child to another juvenile detention facility to be detained" if necessary. *See Exhibit 2 (March 19, 2019 Detention Order)*.

30.     As the director or supervisor of the detention center, the Judge may modify the conditions of a child's confinement[3] either positively or negatively and receives reports from the Sheriff or his designee of any disciplinary or conduct issues related to a child.

31.     There is no grievance procedure available for detainees at the Sumner County facility.

32.     There are no notifications as required by PREA available to the child.

33.     The child has not been afforded a review of any rules or guidelines of the facility.

34.     This child is confined to an 8x8 cell for twenty-three (23) hours per day.

35.     The child is afforded one (1) hour of "rec time" which is enjoyed in the 4x10 hallway outside of his cell.

36.     His cell consists of a thin plastic mattress, a toilet and a sink.

37.     There are no windows in his cell nor the hallway.

## JURISDICTION AND VENUE

38.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights).

39.     Plaintiff brings this action pursuant to 42 U.S.C. § 1983.

40.     Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b).

## PARTIES

---

[3]   The child has not been the recipient of any modifications of confinement ordered directly from the Judge and the same is not alleged.

41.     **Jennifer Nichols** is the duly appointed Commissioner of the Tennessee Department of Children's Services. She is sued in her official capacity and may be served with process by delivery of summons to the Attorney General and Reporter for the State of Tennessee.

42.     **Sonny Weatherford** is the duly elected Sheriff of Sumner County, Tennessee and he is sued in his individual and official capacity.  He may be served in his official capacity by delivery of summons to Anthony Holt, Sumner County Executive, 355 North Belvedere Drive, Room 102, Gallatin, TN 37066.  He may be notified in his individual capacity of the pendency of this action by mailing to 117 W. Smith St., Gallatin, TN 37066.

43.     **Sonya Trout** is the jail administrator for Sumner County, Tennessee and provides intermediate supervision and issuance of discipline for juvenile detainees held in Sumner County. She is sued in her individual capacity and may be notified of the pendency of this action by mailing to 117 W. Smith St., Gallatin, TN 37066.

44.     **Honorable David R. Howard** is the duly elected juvenile court judge who provides supervision and direction for the detention center licensed by Sumner County, Tennessee.  He is sued in his official and individual capacity. He may be served in his official capacity by delivery of summons to Anthony Holt, Sumner County Executive, 355 North Belvedere Drive, Room 102, Gallatin, TN 37066.  He may be notified in his individual capacity of the pendency of this action by mailing to P.O. Box 549, Gallatin, TN 37066.

## **FACTUAL ALLEGATIONS**

### SOLITARY CONFINEMENT OF JUVENILES

45.     A presidential executive order was issued during the last administration prohibiting the solitary confinement of juveniles in federal facilities and acknowledged the harmful impact of the same to children.

46.     The United States Attorney General's Office has acknowledged that solitary confinement of juveniles illustrates one of the most harmful impacts of incarceration.

47.     The Tennessee legislature has prohibited the use of solitary confinement for punishment or disciplinary purposes.

48.     The international community through the United Nations has recognized the solitary confinement of juveniles to be cruel, inhumane and degrading.

49.     The American Academy of Child and Adolescent Psychiatry recognizes that children are especially vulnerable to the harmful impact of solitary confinement.

50.     Children who are held or have been held in isolation for extended periods of time are statistically more likely to commit suicide.

51.     Children who are held in isolation are less likely to receive federally mandated educational services.

52.     Children who are held in isolation are less likely to receive appropriate medical care.

53.     Children who are held in isolation are less likely to leave detention or confinement in overall good health.

54.     No reputable expert opinions, journals, articles, or studies suggest that solitary confinement, seclusion or isolation measured in days, weeks or months is more likely to rehabilitate the child, make communities safer, or otherwise benefit society generally.

## *TENNESSEE STATUTORY STRUCTURE*

55.     Tennessee juvenile courts are county funded and maintained.

56.     Juvenile court judges and staff are employees of the county in which they are assigned.

57.     Counties may contract with one another to provide support to maintain appropriate facilities and services necessary to the juvenile court.

58.     A law enforcement officer may seize a child upon probable cause that the child has committed a delinquent and unruly act.

59.     When a child is seized for a delinquent or unruly act, he may be detained pre-trial at a detention facility.

60.     In practice, when a police officer "arrests" a child, the child is lodged in the juvenile detention center awaiting a detention release hearing at which the juvenile court judge determines if the child shall continue to be detained pending adjudication.

61.     A child may only be detained in a facility licensed by DCS.

62.     Juvenile pre-trial detainees may be held indefinitely so long as the juvenile court makes a finding of "good cause" to continue the hearing beyond thirty (30) days.

63.     Juvenile pre-trial detainees are not entitled to bond pending adjudication and may be detained pre-trial upon the discretionary findings of the juvenile court judge.

64.     Cases in which the state seeks to transfer the child to adult criminal court are not required to be heard within a finite time frame – again in the discretion of the juvenile court judge.

65.     Counties may seek licensure for facilities owned and operated by the county or may contractually agree with other counties to house such children.

66.     Facilities may be licensed as a temporary holding resource (THR) or a juvenile detention center (JDC).

67.     Upon being adjudicated delinquent, the temporary legal custody of a child may be granted to DCS as a dispositional matter.

68. DCS maintains Youth Development Centers (YDC) which may only house children who have been adjudicated delinquent and committed to their custody.[4]

69. DCS maintains rules for the licensure of THR and JDC facilities.

70. DCS has adopted policies for the custodial conditions of children in its legal custody and housed at a YDC.

71. DCS has adopted notification policies surrounding children in its legal custody because of abuse or neglect that are charged or alleged to be delinquent and detained in a THR or JDC pending adjudication.

72. As part of the licensure process, DCS is required to supervise and inspect detention facilities on a yearly basis.

73. This child's circumstance, that of being housed in solitary confinement as an ordinary process, does not fall under the mandates of state law or DCS policy.

## DCS AS LICENSING AUTHORITY

74. DCS has defined seclusion in its licensing rules as an intentional affirmative act of segregating children for punishment or discipline.[5]

75. The rules promulgated by DCS do not prohibit seclusion or solitary confinement on of children for *no reason*.

76. The rules as promulgated by DCS exempt existing facilities, those who commenced operations before July 1, 2017 from having basic physical plant requirements.

77. Existing facilities are not required to have a common area, an area for medical treatment, dayrooms, outdoor facilities, private meeting rooms for attorney-client conversations, nor visitation rooms for family members or support person visits.

---

[4] This action does not relate to YDC conditions as the child has not been adjudicated delinquent.

[5] Seclusion is the verbiage that Tennessee uses to describe solitary confinement.

78.     DCS prohibits the use of seclusion of children on a routine basis or as punishment and has adopted stringent policies for the monitoring and supervision of children committed to its custody after being found delinquent and placed in its Youth Development Centers (YDC). *See Policy 25.5; DOE policy directive 25.5.*

79.     DCS has acknowledged through its policy and prior consent decrees that solitary confinement and/or seclusion of juveniles has significant adverse consequences to the child both in the short term and long term.

### DCS AS LEGAL CUSTODIAN

80.     A child in the legal custody of DCS may be detained by a county government upon allegation of a delinquency act.

81.     DCS must monitor and record each placement of a child while in the custody of the state.

82.     DCS has adopted policy that requires supervisory approval and notification to the legal division when a child is detained in a juvenile detention facility without having been previously adjudicated delinquent.

83.     The placement of a child in the legal custody of DCS in a county detention facility does not divest DCS of its status as legal custodian.

84.     DCS has adopted policies to maintain the health, welfare, safety and well-being of children in its custody.

85.     DCS licenses county detention facilities with the specific knowledge and anticipation that children who are in its legal custody may be detained in such facilities.

### SUMNER COUNTY JUVENILE DETENTION CENTER

86.     Sumner County, Tennessee applied for and was granted a licensed by the Tennessee Department of Children's Services to operate a "Juvenile Detention Center or Holding Facility."

87.     Sumner County, Tennessee commenced operation of its detention center prior to July 1, 2017 and received licensure approval for a facility categorized as an "existing facility" by the rules and regulations promulgated by DCS (Rule 0250-04-08.02).

88.     The detention center is physically a part of the Sumner County courthouse complex, which also is physically connected to the adult detention center.

89.     The detention center is accessed directly from the interior of the courthouse by entering a designated hallway that opens into a room that will accommodate a desk and several filing cabinets ("staff office").

90.     The following photograph is a fair and accurate depiction of the staff office:



**Photograph #1**
Staff Office with access to pod hallway on the left of the photo immediately before steel door.

91.     The staff office is approximately 150 square feet and contains a desk, filing cabinets and 3-4 chairs.

92.     The opposite wall the staff office does not reveal additional space.

93.     The following photograph is a fair and accurate description of the opposite wall of the staff office depicting the entirety of the space:



**<u>Photograph #2</u>**
Second view of staff office
illustrating size.

94.     Juvenile detainees are held in a pod that is accessed by turning immediately to the

left into an open hallway located immediately before the steel door depicted in photograph #1.

95.     The following is a fair and accurate depiction of the hallway with the

photographer standing in the staff office in front of the steel door next to the metal chair depicted

in photograph #1:



**<u>Photograph #3</u>**
Hallway with two (2) cell
doors on each side and a
shower at the end of the hall.

96.     The hallway is approximately four (4) feet wide and ten (10) feet long.

97.     There are two (2) cell doors on each side of the hallway to access individual cells.

98.     At the end of the hallway, the steel door that opens to a shower area.

99.     The following is a cropped image which was enlarged after being taken from photograph #2 that appears to be a floorplan of the facility:



**Photograph #4**
Apparent floor plan of pod.

100.    The cells on the left are 8 feet x 8 feet.

101.    The dimensions of the three (3) cells on the right are approximately four (4) feet by six (6) feet.

102.    The two smaller cells on the right are accessed from within the hallway and the remaining cell on the right is accessed in the staff office by the steel door depicted in photographs 1 & 2.

103.    There are no windows in the staff office nor the larger cells on the left.

104.    The cells are hardware secure.

105.    The cells contain a toilet, sink and steel bed.

106.    The children are provided a thin plastic mattress.

107.    The following is a fair and accurate depiction of the cell bed and mattress:



**Photograph #5**
Interior of 8' wide cell.

108.    The child is given a pillow and small blanket for sleeping, which is not visible in photograph #5.

109.    There are no other items of bedding provided to child.

110.    From the end of the bed depicted in photograph #5, the child can prop his feet on the toilet which is outside the view of the camera.

111.    The child eats his meals sitting on the bed.

112.    The child meets with his attorney sitting on the bed.

113.    The child uses the telephone, when permitted, in the cell.

114.    The cell has no other furnishings not depicted in photograph #5, except a toilet and sink.

115.    Routine medical examinations are conducted in the child's cell.

116.    To the extent that education is provided, such occurs in the cell with the child sitting on the bed.

117.    There is no area to permit family or other visits.

118.    The operational model of the facility requires that the children remain in these cells for twenty-three (23) hours per day without contact or communication with other persons, unless such persons are staff, or professionals.

119.    There are no procedures for lodging a grievance.

120.    No written information is provided to the children instructing them on what action to take if they have a grievance.

121.    No oral information is provided to the children instructing them on what action to take if they have a grievance.

122.    Children are not informed of the rules, policies or procedures governing the facility.

123. If a child is deemed to have committed a disciplinary infraction, the staff supervising the facility documents their version of the infraction and sends the same to Defendant, Sonya Trout, the jail administrator for Sumner County.

124. Ms. Trout reviews the staff version of the infraction and determines punishment.

125. The child has no notice or opportunity to be heard on discipline issues.

126. Solitary confinement or seclusion is not used as punishment as the children remain in solitary confinement for the entirety of their stay as part of the operational model of the facility.

127. The children are not permitted to challenge the decision of Ms. Trout administratively.

128. The infraction, as documented in an incident report, along with the discipline imposed is communicated to the juvenile court judge, the district attorney and the child's attorney.

129. The infraction is made a part of the juvenile court record maintained for the delinquency action.

130. The filing of such discipline does not trigger any hearing before the judge.

131. When a child is detained by the juvenile court judge, physical custody of the child is remanded to the county sheriff for purposes of housing the child and/or transporting the child to another facility, if necessary.

132. The county sheriff may be ordered by the juvenile court judge to modify the ordinary conditions of confinement either to the benefit or detriment of the child.

133. During "rec time" the children are permitted to leave their isolation cells and step into the 4x10 hallway depicted in photograph #3 where they may stand alone.

134.	From time to time, "rec time" may include an invitation by the supervising staff member to play checkers or cards in the staff office.

135.	Such an invitation is discretionary on the part of the supervising staff member.

136.	There is only one (1) supervising staff member monitoring the children at any given time.

137.	The supervising staff members are employees of the Sumner County Sheriff's Office.

138.	Once admitted to the facility, children are not permitted to be outdoors.

139.	Once admitted to the facility, children have little to no access to education – formal or informal.

140.	Once admitted to the facility, any continuum of medical care prior to admission is terminated.

141.	Once admitted to the facility, the children do not receive routine medical care unless the juvenile court judge grants a "furlough" to allow visits to physicians.

142.	Children are entitled to counsel, but counsel is limited to a fee of $1,500 for the defense of the juvenile for a non-capital felony inclusive of motions or hearings to obtain routine medical, educational or other basics denied by the facility.

143.	The facility provides no information as required by PREA.

144.	The children are not informed on any aspect of PREA.

145.	The children are not provided an opportunity for physical exercise.

146.	The children are not provided an opportunity for mental stimulation.

<u>JOHN DOE</u>

147.	John Doe is alleged to be delinquent based upon events that if he were an adult would constitute a serious crime.

148.    He is in the full guardianship of DCS as dependent and neglected child.

149.    He is being held without bond and state law does not permit the setting of bond unless the delinquency action is transferred to adult criminal court.

150.    Upon arrest, he was detained in the Sumner County Juvenile Detention Facility (SCJDC) for several days but was then transferred to the Rutherford County Juvenile Detention Center (RCJDC) to await adjudication of the delinquency matter which was scheduled several months in the future.

151.    He reported upon entering detention that he had seven (7) cavities, suffered from ADHD and Bipolar disorder.

152.    He has not received dental care, has depleted his medication supplies and been denied access to medical professionals to seeking additional treatment.

153.    DCS has not requested, provided or otherwise made arrangements for such treatment during his detention.

154.    He was transferred back to SCJDC to attend a motion hearing in his pending matter in the juvenile court on March 19, 2019.

155.    He was appointed counsel by the Sumner County Juvenile Court, namely, Marjorie A. Bristol.

156.    He declined to accept the plea deal offered by the District Attorney's office.

157.    Upon conclusion of the hearing, which consisted of less than one (1) hour, his attorney was informed that he would not be going back to RCJDC.

158.    No process exists for the determination as to whether children will be retained in Sumner County or be transferred to a facility that can house children in humane conditions.

159.    He has remained at SCJDC since March 19, 2019.

160.    At all relevant times herein that he was admitted to SCJDC, he has experienced each and every condition describing the SCJDC herein.

161.    He has been in solitary confinement for 23 hours of each day.

162.    The remaining one (1) hour is often expended in solitary conditions in the hallway outside of his cell.

163.    He has not seen natural light since his admission.

164.    Space for large muscle exercise does not exist.

165.    The child has not been provided adequate nutrition for his age, size and height.

166.    Children detained in Sumner County receive the routine diet fed to adult prisoners without regard to their nutritional needs.

167.    Until April 10, 2019, he had not had any educational instruction.

168.    On April 10, 2019, he was provided a one (1) hour session with an unknown educational professional that provided no instruction nor learning opportunity.

169.    The educational professional, nor Sheriff's Department staff were aware that the child had an IEP nor had any information about his educational needs.

170.    He has become depressed and anxious.

171.    He has shouted and banged on the door – which resulted in the suspension of telephone privileges for two (2) weeks by Ms. Trout without providing an opportunity for the child to state the "demands" that he was making that precipitated his outburst.  She levied her ruling via email.  *See Exhibit 3 (Email from Sonya Trout & Informational Summary)*.

172.    Exhibit 3 was filed in the child's court record and communicated to the Judge, the District Attorney and Defense counsel.

173.    He has lost thirteen (13) pounds since March 19, 2019 – the date of his solitary confinement began.

174.     His attorney has been unable to access his medical records.

175.     He has been unable to see his physician to have prescription medication refilled.

176.     His DCS case manager has not visited him during his detention.

177.     His attorney discussed the conditions of the facility with a staff member who acknowledged that children were not supposed to be there more than seventy-two (72) hours.

178.     His attorney overheard staff members indicating that John Doe and his co-defendant would be housed at the facility indefinitely.

179.     The co-defendant in his case is twelve (12) years old and lives in the same conditions as John Doe in the other 8x8 cell depicted above.

180.     There has been no effort or inclination by the Sumner County Sheriff's Office or the Judge to have these children transferred to more appropriate facilities.

181.     On March 26, 2019, Ms. Bristol, discussed the case with Eric Mauldin, Assistant District Attorney who commented that the child might be more likely to plead guilty now that he was lodged Sumner County.

182.     The District Attorney was referring to the conditions of the Sumner County Juvenile Detention Center being the impetus for the child's guilty plea.

183.     The District Attorney sought and continues to seek transfer of the child to adult court with a sentence to be served as an adult.

184.     The juvenile court, its staff and judicial officers are employees of Sumner County, Tennessee.

## <u>COUNT ONE</u>

*Substantive Due Process*
(42 U.S.C. § 1983)

185. The child, John Doe, reincorporates and re-alleges each, every and all allegations herein.

186. The Defendants, individually and in concert with one another deprived the child, John Doe, of his rights under the Fourteenth Amendment of the United States Constitution and continuing to deprive him of those rights each day as a result of the facts and circumstances of his confinement alleged herein.

187. The Defendants, individually and in concert with one another, have denied him basic human rights, including but not limited to, adequate medical care, educational services, nutrition, exercise, human interaction, and mental stimuli.

188. The child is particularly vulnerable having not attained sufficient age nor maturity to understand and cope with conditions typically reserved in adult penal institutions for the worst of the worst offenders.

189. There is no legitimate governmental interest for the routine prolonged use of solitary confinement.

## COUNT TWO

*Sixth Amendment*
(42 U.S.C. § 1983)

190. The Defendants, individually and in concert with one another have systemically and methodically abridged the child's right to a fair trial and continue to do so each day that he is confined in solitary and inhumane conditions.

191. The child is facing transfer of his delinquency action to adult criminal court but is subjected to confinement in a facility supervised by the presiding judge.

192. The presiding judge is notified of allegations of misconduct, bad behavior and daily activities of the child.

193.    The conditions of the child's confinement as directed by the Defendants, individually or in concert with one another, are presumed to be so inhumane that the child will plead guilty to an adult offense rather than remain in solitary confinement.

194.    Tennessee limits compensation for attorneys provided for child alleged to be delinquent that are insufficient to provide an adequate defense for the child while litigating conditions of confinement.

## **COUNT THREE**

*Eighth Amendment*
(42 U.S.C. § 1983)

195.    The Defendants, individually and in concert with one another, have intentionally deprived the child of his right to be free from cruel and unusual punishment and have have acted with deliberate indifference to those rights.

196.    To subject the child to solitary confinement as a routine standard of practice for indefinite time periods constitutes cruel, unusual, inhumane and torturous conditions in violation of the Eighth Amendment of the United States Constitution.

197.    The Defendants have done so since March 19, 2019 and continue to do so indefinitely.

198.    The solitary confinement of the child serves no governmental interest, legitimate or otherwise, and is likely to result in a poor outcome for the child and the community upon the child's release.

199.    Each of these defendants are aware of the harm that solitary confinement inflicts upon this child both in the immediate and long term.

200.    The actions of the defendants violate public policy, state and federal law and is contrary to the best interest of the child and community.

## COUNT FOUR

*Declaratory Judgment*

201.    The child seeks a declaration by this Court that the actions of the Defendants violate his constitutional rights and will continue to violate his constitutional rights in the future, regardless of whether the Defendants' actions may be construed to be in accordance with policy, statute, rule, custom or practice.

## COUNT FIVE

*TRO, Temporary and Permanent Injunction*

202.    The allegations contained herein form a sufficient basis and the child is entitled to a Temporary Restraining Order, Preliminary and Permanent Injunction.

203.    Upon information and belief, it is the intent of the Defendants, individually, collectively or any combination thereof, intend to continue to confine the child in the inhumane conditions afforded by the facility licensed by Sumner County, Tennessee and directed by the Judge of the Juvenile Court for Sumner County, managed by the Sheriff of Sumner County, and administered by Sonya Trout until such time as he pleads guilty to adult criminal charges or is otherwise transferred to adult criminal court.

204.    Upon information and belief, RCJDC contracts with Sumner County, Tennessee to house juvenile pre-trial detainees on a regular and routine basis.

205.    For arbitrary and uncertain reasons, the child and his twelve (12) year old male co-defendant have remained detained in the Sumner County facility in solitary confinement.

206.    The child's co-defendant also faces transfer to adult criminal court.

207.    There is no legitimate government interest in retaining the child in solitary conditions, nor detaining any child in such conditions for any length of time.

208.    The child has no remedy for review that would have meaningful impact on the conditions of his confinement as described above.

209.    The Defendants will continue to subject the child to such inhumane conditions without the intervention of this court on an expedited and emergency basis.

## COUNT SIX
*Federal Rule of Civil Procedure 17(c)*
*Appointment of Guardian Ad Litem*

210.    The child is in the permanent legal guardianship of DCS without family to prosecute this action on his behalf.

211.    DCS licenses the facility in which he is subjected to cruel and inhumane treatment.

212.    Sumner County owns and operates the facility in which he is subjected to cruel and inhumane treatment.

213.    Sumner County employees the Sheriff who maintains the facility.

214.    The duly elected judge presiding over the delinquency action supervises and directs the facility.

215.    The child has been appointed defense counsel for the purpose of defending his interests in the delinquency action who has acted as his next friend for purposes of filing this action.

216.    The child's attorney is not being compensated for her time and responsibility in bringing this action but without agreement to do so, the child would remain in the inhumane conditions provided by Sumner County and approved by DCS.

217.    The child must be appointed a guardian ad litem, preferably his attorney prosecuting this action and familiar with his situation, to be taxed as costs of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, the child prays for the following:

218.    The Court declare that the actions of the Defendants, individually and collectively, violated the constitutional guarantees of the child as described herein.

219.    The entry of an immediate temporary restraining order prohibiting the child's legal custodian, the Tennessee Department of Children's Services, from maintaining licensure of any detention facility in which the child is detained that implements, employs or otherwise uses solitary confinement for any purpose other than the immediate safety of the child or others.

220.    The entry of an immediate temporary restraining order prohibiting Sumner County, Tennessee from detaining the child in solitary conditions except that which may be permissibly used for purposes of seclusion as defined by DCS licensure rules.

221.    A preliminary and permanent injunction enjoining the Defendant, DCS from granting or maintaining licensure to facilities that routinely employ solitary confinement of juveniles for convenience, fiscal or other non-emergent reasons or that fail to adequately provide confidential and accessible grievance procedures that would have a meaningful impact on inhumane conditions for children housed in such facilities but remain in the legal custody of DCS.

222.    A preliminary and permanent injunction enjoining the Sumner County Defendants from operating or maintaining a juvenile detention facility which does not meet a substantial portion of the physical plant requirements iterated by DCS rules for "new" facilities or in the alternative to enjoin Sumner County from detaining children in its current facility beyond the detention release hearing to be conducted within the time periods allowable by state law.

223.    A preliminary and permanent injunction requiring DCS to implement sunset provisions for the licensure of "existing facilities" which are permitted to maintain operations

without meeting current standards and prohibit the licensure of facilities that do not meet the standards for "new facilities" as defined by the rules and regulations promulgated by the agency.

224.     An immediate temporary restraining order and subsequent preliminary and permanent injunction prohibiting the Defendants, their agents or assigns, or those in privity or concert with the Defendants from taking any retaliatory action against the child while he remains in the custody of the Defendants or otherwise.

225.     An award of nominal and compensatory damages.

226.     An award of attorney fees and costs associated with this action, including the costs of the guardian ad litem, pursuant to 28 U.S.C. § 1988, et. seq. and under any other relevant authority.

227.     This Court retain jurisdiction of this matter to enforce its orders prospectively.

228.     Any and all further relief the Court may deem just and proper.

Respectfully Submitted,

_____
AGNES TRUJILLO (#025229)
*Trujillo & Associates, Pllc*
1105 Banner Street
P.O. Box 1249
Dandridge, TN 37725
(865) 397-8590
agnes@agnestrujillo.com